**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SYNTAX-BRILLIAN CORPORATION, <u>et al.</u>, | ) ) | Case No.   08-11407 (BLS) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |
| | ) | |
| | ) | Docket Reference No. 1167 |

**OPINION**[1]

Mr. Ahmed Amr (the "Movant") has filed a motion (the "Motion") on a pro se basis requesting the allowance of fees and expenses as administrative expenses pursuant to 11 U.S.C. § 503(b).  The Debtors have objected to his request.  For the reasons set forth below, the Court will grant in part and deny in part the Motion.

**JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(1) and (b)(2)(B).

---

[1]    This Opinion constitutes the findings of facts and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

## BACKGROUND

On July 8, 2008 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"). At the time of the filing, the Movant was a shareholder in Syntax-Brillian Corporation, then a public entity incorporated in Delaware with offices in Tempe, Arizona, and City of Industry, California.

Shortly after the Debtors commenced their cases, the Movant appeared in this Court and raised substantial allegations of fraud and misconduct on the part of the Debtors' management and business partners. Shortly thereafter, the United States Trustee filed a motion requesting the Court appoint an examiner pursuant to Section 1104 of the Bankruptcy Code. Docket No. 112. The Court granted the Trustee's motion by Order dated August 25, 2008, and the examiner's investigation ultimately uncovered evidence supporting the Movant's allegations of fraud and misconduct. In part because of the Movant's persistence, which included regular attendance at and participation in court proceedings, the creditors have been made aware of a variety of claims and causes of action as potential sources of recovery in these cases.

On March 6, 2009, the Court issued an order setting April 10, 2009 as the deadline for creditors to file requests for payment of administrative expenses against the Debtors' estates.

2

On April 7, 2009, the Movant timely filed the Motion requesting (i) reimbursement for expenses and (ii) compensation for time spent in connection with these cases.  More specifically, the Movant has requested the sum of $6,700 for reimbursement of expenses (airfare between Wilmington and Seattle, car rental, meals, and lodging) for nearly a dozen trips to this Court.  He has also requested to be compensated not less than $60,000 (reflecting Movant's estimate of 1,200 hours of work at $50 per hour) for services performed during these cases.

## DISCUSSION

In deciding whether to grant the relief sought by the Movant, the Court must determine: (1) whether the Movant substantially contributed to the Debtors' chapter 11 case; (2) whether the Movant can recover his expenses under 11 U.S.C. § 503(b)(3)(D); and (3) whether the Movant can be compensated under 11 U.S.C. § 503(b)(4).

I.  **The Movant has made a substantial contribution to the Debtors' chapter 11 cases.**

Under 11 U.S.C. § 503(b)(3)(D), the Court may allow, as administrative expenses, "the actual, necessary expenses, other than compensation and reimbursement specified in [section 503(b)(4)], incurred by … an equity security holder . . . in making a substantial contribution in a case under chapter 9 or 11 of this title . . . ."  The Debtors assert that the Movant

3

did not substantially contribute to their chapter 11 cases, and therefore, the Court should not allow his "actual, necessary expenses" as administrative expenses.

The burden rests with the Movant to prove by a preponderance of the evidence that he made the requisite substantial contribution to the Debtors' case. In re Buckhead Am. Corp., 161 B.R. 11, 15 (Bankr. D. Del. 1993). "The Bankruptcy Code does not define 'substantial contribution.'" In re Summit Metals, Inc., 379 B.R. 40, 50 (Bankr. D. Del. 2007). A movant's activities constitute a substantial contribution if they "'resulted in an actual and demonstrable benefit to the debtor's estate and the creditors.'" Lebron v. Mechem Fin. Inc., 27 F.3d 937, 944 (3d Cir. 1994) (quoting Haskins v. United States (In re Lister), 846 F.2d 55, 57 (10th Cir. 1988)). As Chief Judge Carey recently observed, a claimant's "activities must 'facilitate progress in the case, rather than . . . retard or interrupt.'" Summit Metals, 379 B.R. at 50 (quoting In re Gurley, 235 B.R. 626, 636 (Bankr. W.D. Tenn. 1999).

When determining whether a movant's activities amount to a substantial contribution, courts have examined "'whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case; whether the services conferred a direct benefit upon the estate; and whether services were duplicative of services performed by others.'" Id. at 51

4

(quoting Gurley, 235 B.R. at 636).  Furthermore, the courts should construe "substantial contribution" to exclude "reimbursement in connection with activities of . . . interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate." Lebron, 27 F.3d at 944.

The Movant asserts that he made a substantial contribution to the Debtors' chapter 11 cases.  In support of his assertion, the Movant alleges as follows:

> My contributions and discoveries in this case have had tangible benefits including assisting the examiner, enlightening the court, adding considerable substance and veracity to the proceedings, creating opportunities for causes of actions. . . .
> The court has acknowledged that I was a primary force behind the appointment of the Examiner, Mr. Feltman.  The Honorable Brendan Shannon has also acknowledged that value of my independent forensic analysis as having jumpstarted Mr. Feltman's investigation. . . .
> As a result of the examiner's work, the unsecured creditors' committee has filed a lawsuit directed against the former management of Syntax-Brillian.  Silver Point has also filed a lawsuit in California against the former management and the auditors based on the examiner's discoveries.  Together the two suits allege serious misconduct against six of the seven directors who approved the bankruptcy petition.
> When the examiner was hired – I prepared for him a number of documents

> detailing the matrix of relationships between Syntax-Brillian and its supply chain partners – including Kolin, TCV, SCHOT, Westech, Olevia Far East and the Nanjing Hua Hai Display Technology Company.  The examiner's reported back to the court that Syntax-Brillian was run for the benefit of Kolin – not the shareholders and that, among other things, 140 million dollars were siphoned off to Taiwan under the guise of tooling deposits.

<u>See</u> Movant's Resp. 2-3, Docket No. 1370.  In their objection to the Motion, the Debtors denied that the Movant substantially contributed to their chapter 11 cases, and further asserted that no benefit accrued to the parties to the Debtors' Chapter 11 cases from the Movant's efforts.

The Court finds that the Movant's activities and efforts amount to a substantial contribution.  The Court has previously stated that the Movant was instrumental in the appointment of an examiner who discovered evidence of misconduct by the Debtors.  Because of the Movant's intervention, new or more promising avenues of recovery have been opened to various parties, including the unsecured creditors and Silver Point.  Furthermore, through his labors, the Movant represented not only his own narrow interests, but the broader interests of the Debtors, creditors, and shareholders.  Therefore, by furnishing the Debtors' estates and stakeholders with an actual and demonstrable benefit the Movant substantially contributed to the Debtors' chapter 11 cases.

**II.   The Movant can recover his expenses under 11 U.S.C. § 503(b)(3)(D).**

Having found that Movant's activities and efforts constitute a substantial contribution, the Court must resolve whether Movant's expenses were actual and necessary.  Summit Metals, 379 B.R. at 53.  In support of his request for reimbursement under section 503(b)(3)(D), Movant "must provide sufficient details of each expense incurred for which reimbursement is sought."  Id.  Local Rule 2016-2 governs this process and requires that a motion for reimbursement of expenses under section 503(b)(3)(D) include "an expense summary by category for the entire period of the request."  Del. Bankr. L.R. 2016-2(e)(i).  Furthermore, each expense must be itemized with "the date the expense was incurred, the charge and the individual incurring the expense, if available."  Del. Bankr. L.R. 2016-2(e)(ii).

Here, the Movant attached an expense summary to his motion.  See Docket No. 1167.  The summary meets the requirements set forth above.  The expenses listed amount to $6,700, are adequately particularized, and are limited to airfare, lodging, local transportation, and communication expenses.  These expenses were actual and necessary to the Movant's activities and efforts that constituted a substantial contribution, and

7

therefore, the Court allows the Movant an administrative expense claim in the amount of $6,700.

### III. The Movant cannot be compensated under 11 U.S.C. § 503(b)(4).

The Court now turns to Movant's request to be compensated, at a rate of not less than $50 per hour, for his efforts during the cases.  The request is governed by Bankruptcy Code section 503(b)(4), which provides as follows:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under [11 U.S.C. § 502(f)], including . . . reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under [11 U.S.C. § 502(b)(3)(A)-(E)], based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under [Title 11], and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

11 U.S.C. § 503(b)(4).  Accordingly, section 503(b)(4) thus contemplates reasonable compensation only for professional services rendered by an *attorney* or an *accountant*.  See Summit Metals, 379 B.R. at 50.

Here, the Movant performed the professional services himself.  However, the Movant is neither an attorney nor an accountant, and the Code therefore does not permit the Court tp award the Movant any compensation for professional services rendered under section 503(b)(4).  As a result, the Court is

8

constrained to deny Movant's request for payment of an administrative expense exceeding $60,000 for professional services rendered.

## CONCLUSION

For the reasons set forth above, the Movant's request for payment as an administrative expense of actual, necessary expenses in the amount of $6,700 is granted, and the Movant's request for payment as an administrative expense of compensation in any amount for professional services rendered is denied.

An appropriate order will issue.

BY THE COURT:

Dated:   June 5, 2009

Brendan Linehan Shannon
United States Bankruptcy Judge