IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **Syntax-Brillian Corp.,** *et al.*,[1] | Case No. 08-11407 (BLS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos. 2294 and 2303 |

## OPINION[2]

Before the Court is the motion (the "Motion") of Alan Levine, appearing *pro se*, (the "Movant" or "Mr. Levine") for relief from the order accepting into evidence the Rayburn Declaration.[3] The SB Liquidation Trust (the "Trust") opposes the Motion,[4] and numerous shareholders have filed motions to intervene (the "Joinder Parties") in support of the Motion. While the Motion seeks various forms of relief,[5] at the hearing on the Motion on April 13, 2016 Mr. Levine clarified that he has two requests: first, that this Court vacate or reverse its ruling that admitted into evidence the Declaration of Gregory F. Rayburn in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief (the "First Day Affidavit");[6] and second, that this Court direct the Trust to allow the Debtors' books and records be subject

---

[1] The Debtors are the following entities: Syntax-Brillian Corporation, Syntax-Brillian SPE, Inc., and Syntax Groups Corporation.

[2] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

[3] D.I. 2294.

[4] D.I. 2303.

[5] *See* Motion, at 5 ("Whereby, I move for relief form the Court's order accepting into evidence the Rayburn Affidavit and I move for relief from the Court's order accepting into evidence Nancy Mitchell's testimony in the First Day's hearing and I move for relief from any Court order based on the Rayburn Affidavit and the testimony of Nancy Mitchell in the First Day's hearing including the order approving the Disclosure Statement, the Order approving the Plan and I move the Court to vacate the exculpation provisions of the plan. I also move the Court to impeach Gregory Rayburn and Nancy Mitchell and their affidavit and testimony. I also move the Court to vacate the order denying my claim and I move the Court grant monetary relief and any other relief the court deems to be just.").

[6] D.I. 3.

to review upon request. For the reasons stated below, the Motion will be denied in its entirety.

**I.    INTRODUCTION**

Companies sometimes fail. Failure can occur for a host of reasons, including mismanagement, changing tastes or technology, insuperable competition, even natural disasters. And companies can and do fail when they are victims of fraud. The failure of a corporation can bring loss and suffering to employees and management, vendors, customers and investors, all of whom hope at least for some recovery from the failed enterprise. Congress has decreed that shareholders in a bankrupt company cannot receive anything on account of their investment until all secured, priority and unsecured creditors are paid in full. This principle applies even when the company—and by extension, the shareholders—is a victim of fraud.

In July 2008, Syntax-Brillian Corporation filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The company tried and failed to sell itself in the first few months of the case, and promptly shut down operations. Its chapter 11 Plan[7]—confirmed in July 2009, nearly seven years ago—provided for the creation of a liquidation trust, charged with administering claims against the estate, liquidating assets (including prosecuting causes of action) and making distributions to holders of allowed claims. The Plan provided that shareholders could potentially receive a distribution on account of their stock holdings in Syntax, but both the Plan and federal law expressly provide that no distributions to shareholders can be made until all claims are paid in full. The Court is

---

[7] Capitalized terms not defined in this Introduction are defined *infra*.

advised that creditors holding allowed unsecured claims have to date received less than 25% on account of their claims.

Syntax was the victim of a fraud, apparently perpetrated by certain members of its management team as well as its suppliers in the Far East. The Court is acutely aware of the suffering endured by Syntax's shareholders on account of the collapse of the company. The Court's sympathy, however, does not change the economic reality and legal principles in play. Under the Plan, there is not presently a return for Syntax's shareholders, and there is not likely to be a return in the future.

Regrettably, shareholders of companies that file for bankruptcy relief often (and perhaps typically) see their interests wiped out. This is the case even where the shareholders purchased their shares in reliance upon fraudulent or misleading information: Section 510(b) of the Bankruptcy Code specifically provides that claims arising from the purchase or sale of stock in a debtor are subordinated to all other claims.

Consequently, the result in this case is neither unusual nor inconsistent with well-settled legal principles. What is unusual about this case is the amount of time and resources that shareholders have spent pursuing a recovery. As noted, the Plan was confirmed nearly seven years ago, and the Disclosure Statement accompanying the Plan specifically stated that recovery for shareholders was unlikely.[8]

---

[8] *See* Disclosure Statement, at 40 ("On the Effective Date, Class 7 Equity Interests will be cancelled. *Holders of Allowed Equity Interests will not receive any distribution of any kind under the Plan on account of Allowed Equity Interests*; provided, however, that if prior to the closing of the Chapter 11 Cases the Liquidating Trustee, in consultation with the Creditor Representatives, determines that Residual Equity Assets are available for distribution to Holders of Allowed Equity Interests (meaning that additional assets are available after satisfying in full all other pre- and post-Petition Date claims and trust expenses), . . . the Liquidating Trustee will file a motion with the Bankruptcy Court requesting approval of procedures for making distributions to the Holders of Allowed Equity Interests as of the Equity Interest Record Date. *The Debtors do not believe that any assets will be available for such distributions.*") (emphasis added).

Certain shareholders continued to persist in post-confirmation litigation, to the point that the Trustee deemed it necessary in 2013 to enter into a confidential cash settlement with these several shareholders. While the settlement was not presented to the Court for approval (as it was a post-confirmation settlement within the authority of the Trustee) or disclosed to other shareholders, the Trustee has advised the Court that the confidential settlement was entered into for the purpose of bringing peace for the Trust and stopping the burn of legal fees associated with dealing with these litigants.

At the hearing on the matter presently *sub judice*, the Court was distressed to learn that Mr. Ahmed Amr, one of the shareholders who enjoyed a substantial cash payment under the above-described confidential settlement, is actively engaging in or supporting litigation against the Trust.[9] Even worse, however, was the disclosure during the hearing that Mr. Amr has been dunning other unfortunate Syntax shareholders (who have not received the cash payments Mr. Amr has enjoyed) for contributions to subsidize his costs associated with continuing his fight against the Trust.[10]

The bottom line is this: the decision to invest in Syntax turned out to be a bad idea, and the investment was effectively lost in 2008. While deeply unfortunate, this circumstance is neither remarkable nor fixable by this Court. But it appears that the shareholders' suffering has been compounded by litigants—and specifically Mr. Amr—who have dragged out this process for so many years and kept false hopes alive for a substantial return out of

---

[9] It appears highly likely to the Court that Mr. Amr's participation in recent proceedings in this Court is in violation of the release presumably included in the confidential settlement. *See* Joint Notice of Withdrawal of Certain Shareholder Claims and Pleadings, D.I. 2245, at 3.

[10] At the hearing on the Motion, Arthur W. Shelden, one of the Joinder Parties and a Syntax shareholder, indicated that he has paid Mr. Amr for his efforts in this case. *See* Tr. of Oral Arg., D.I. 2318, at 56 ("Also, I should note that on two occasions I have gifted Mr. Amr small sums of money to help defray his travel expenses related to his persistent forensic pursuit of his and the common shareholder legal interest in the SBC bankruptcy case.").

this bankruptcy case. While it is not the Court's prerogative to give advice to litigants before it, the simple fact is that shareholders who traveled from Pennsylvania, New York, Washington State, Georgia and elsewhere to attend the recent hearing are throwing good money after bad in pursuit of an investment that went bust eight years ago.

## II. BACKGROUND

The Court assumes familiarity with the history of the Debtors' bankruptcy case. The factual background of this case is set forth in two opinions by this Court, *see SB Liquidation Trust v. Preferred Bank (In re Syntax–Brillian Corp.)*, No. 08–11407 (BLS), 2011 WL 3101809 (Bankr. D. Del. July 25, 2011); *SB Liquidation Trust v. Preferred Bank (In re Syntax–Brillian Corp.)*, No. 08–11407 (BLS), 2013 WL 153831 (Bankr. D. Del. Jan. 15, 2013), and also in an opinion by the Court of Appeals for the Third Circuit, *see SB Liquidation Trust v. Preferred Bank (In re Syntax–Brillian Corp.)*, 573 Fed. Appx. 154 (3d Cir. 2014). The following background is only a summary of the facts relevant to the instant matter.

On July 8, 2008, the above-captioned debtors (the "Debtors") filed for relief under chapter 11 of the Bankruptcy Code. The next day, the Court held a "first day" hearing and admitted into evidence the First Day Affidavit. On March 12, 2009, the Court approved the Debtors' Second Amended Disclosure Statement (the "Disclosure Statement").[11] The Disclosure Statement included fulsome disclosure regarding pre-petition and post-petition investigations and claims of the Debtors against a variety of parties, including prior management and trading partners. On July 6, 2009, the Court confirmed the Debtors' Second Amended Chapter 11 Liquidation Plan (the "Plan").[12]

---

[11] D.I. 1020.
[12] D.I. 1529.

Under the terms of the Plan, the Trust was created and certain claims and causes of action of the Debtors' estates were transferred to and in the Trust. Geoffrey Berman was appointed as the trustee (the "Trustee") of the Trust. Since the Trust's creation, the Trustee has administered these cases, resolved claims against the Debtors, and has actively pursued various causes of action.

### III. JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C §§ 1334 and 157(a). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### IV. DISCUSSION

The basic premise of the Motion is one the Court has seen repeatedly in this bankruptcy case.[13] Mr. Levine moves under Fed. R. Civ. P. 60(b) ("Rule 60(b)") and requests this Court to strike the First Day Affidavit. The Movant and the Joinder Parties appear to be proceeding on a flawed premise: as best the Court can discern, it is their expectation that if the Court strikes the First Day Affidavit, then everything that has occurred in this chapter 11 case over the past eight years will be undone. In fact, the docket reflects that the Plan was confirmed and went effective nearly seven years ago, claims have been administered, and the Trustee has made significant distributions on those claims. Striking or vacating the First Day Affidavit, even if ordered by this Court, will not affect or unwind these steps and transactions.

---

[13] *See, e.g.*, Order Denying Motion to Compel Gregg Rayburn to File an Amended Affidavit to Reflect the Exact Circumstances That Led to the Bankruptcy of Syntax-Brillian [D.I. 695]; Order Denying Motion of Ahmed Amr Pro-Se to Dismiss the Debtors' Chapter 11 Petition [D.I. 1307]; Order Denying Motion to Revoke the Confirmation Order [D.I. 1745]; Order Denying Motion to Dismiss Case [D.I. 1847]; Order Denying Motion to Compel SEC to Appoint a Receiver to Administer the Remaining Assets of Syntax [D.I. 1851]; Order Denying Plea for Reconsideration Order Denying Motion to Dismiss the Case [D.I. 1878].

The Motion essentially requests reconsideration under Fed. R. Bankr. P. 9024 of the Court's ruling in 2008 to admit into evidence the First Day Affidavit. A Rule 60(b) motion, made applicable to this matter by Fed. R. Bankr. P. 9024, is an extraordinary remedy only appropriate where rare circumstances are present. *See, e.g.*, *Pilsco v. Union R.R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967). "The framers of Rule 60(b) set a higher value on the social interest in the finality of litigation." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 682 (7th Cir. 1983). A movant "bears a heavy burden" in showing that relief is appropriate under Rule 60. *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (citation omitted). Rule 60(b) provides six grounds that, on a motion, a court may relieve a party from a final judgment or order. All Rule 60(b) motions must be filed "within a reasonable time," and for a motion under subsections (b)(1), (2), or (3), it must be brought not more than one year from the entry of the order. Fed. R. Civ. P. 60(c).

Mr. Levine contends that relief is appropriate because of newly discovered evidence that he believes was noted by this Court in a Memorandum Order, dated February 8, 2016, in an adversary proceeding between the Trust and Preferred Bank.[14] In that decision (the "Rule 12(b) Decision"), the Court held that the Trustee sufficiently pled a cause of action under Bankruptcy Code section 548(a)(1)(A) and 6 Del. Code § 1304(a)(1) alleging actual fraud to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, No. 10-51389 (BLS), 2016 WL 1165634, at *5-6 (Bankr. D. Del. Feb. 8, 2016). Specifically, the Movant asserts that in the Rule 12(b) Decision this Court conclusively found and determined that the Debtors engaged in fraudulent conduct.

---

[14] Adv. Proc. No. 10-51389, D.I. 120.

The Movant has not offered new evidence.[15] He contends that the Rule 12(b) Decision is "new evidence" that fits within the ambit of Rule 60(b). The Movant misunderstands the Rule 12(b) Decision. When the Court stated in the Rule 12(b) Decision that "it accepts as true" the allegations made in the Trustee's complaint,[16] it does not mean that the Trustee has conclusively proven such allegations. *See In re Syntax-Brillian Corp.*, 2016 WL 1165634, at *4. On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must accept well-pleaded allegations as true. *E.g.*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Furthermore, the allegations in the complaint have been subject of litigation for years; indeed, the Movant cites to allegations that have been the subject of active litigation for nearly six years. Because there is no new evidence that would otherwise mandate reconsideration, the request to vacate or strike the First Day Affidavit is denied. Separately, the Court notes that, even if granted, the ruling would not provide the Movant and the Joinder Parties with the monetary recovery they ultimately seek.

The Movant also requests this Court to direct the Trustee to produce the Debtors' books and records for him and other shareholders to review. At the hearing on the Motion, the Trustee vigorously objected to the request, and offered a number of valid and sufficient reasons for his decision. First, and most importantly, none of the shareholders is involved in litigation that would serve to require document production. Second, the Trustee does not want to be in a position of bearing the potentially substantial expense associated with

---

[15] The Motion is also untimely. The Motion seeks to introduce new evidence under Rule 60(b)(2). Fed. R. Civ. P. 60(b)(2) ("On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . newly discovered evidence . . . ."). Rule 60(c) provides that a motion under Rule 60(b)(2) must be made within one year after entry of the judgment or order. The First Day Affidavit was admitted into evidence close to eight years ago.

[16] The Trustee's original complaint was filed on July 7, 2010. Adv. Proc. No. 10-51389, D.I. 1. The Trustee filed an amended complaint on December 17, 2014. Adv. Proc. No. 10-51389, D.I. 103.

responding to document requests from individuals not a party to litigation. Finally, the Trustee is currently in the midst of discovery with Preferred Bank.

The Trustee's objections are well founded. Under the terms of the Plan and the Trust, the Trustee has taken possession of the Debtors' books and records—including such documents that may be in his possession that evidence fraudulent prepetition conduct. It is his responsibility to preserve these materials, pending appropriate direction from the Court, in order to administer the Trust and prosecute necessary litigation. The Trustee has credibly concluded that production of the documents in question will burden the Trust, and by extension holders of allowed claims, with costs associated with that process. Moreover, there is no pending proceeding before this Court to which the Movant's document request would relate. Accordingly, the request of the Movant to compel the Trustee to produce the books, records, and other materials of the Debtors for review by the Movant is denied.

## V.   CONCLUSION

For all these reasons, the Court will deny the Motion. An appropriate order will issue.

**BY THE COURT**:

Dated: May 11, 2016
Wilmington, Delaware

_____
Brendan Linehan Shannon
Chief United States Bankruptcy Judge