## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| SYNTAX-BRILLIAN CORPORATION, *et al.*,[1] | : | |
| | : | Case No. 08-11407 (KJC) |
| Debtors | : | (D.I. 2354, 2355, 2356, 2358, 2361, 2362, 2364) |

## MEMORANDUM OPINION DENYING MOTIONS TO DISQUALIFY AND TERMINATE THE LIQUIDATION TRUSTEE AND THE PROFESSIONALS OF THE LIQUIDATION TRUSTEE[2]

# BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the Motion to Disqualify and Terminate the Liquidation Trustee and the Professionals of the Liquidation Trust for Proceeding on Impeached Evidence (D.I. 2354) filed *pro se* by Frank Waitkus, Jr., a former shareholder of the Debtor.  Similar motions were filed *pro se* by other former shareholders.[3]  The SB Liquidation Trust filed an objection the Motions to Terminate (D.I. 2383) (the "Objection").  A hearing was held on June 16, 2016 at

---

[1] The chapter 11 cases of the following debtors were jointly administered for procedural purposes only pursuant to an Order dated July 9, 2008 (D.I. 32): Syntax-Brillian Corporation, Syntax-Brillian SPE, Inc., and Syntax Groups Corporation (the "Debtors").   On May 17, 2016, these chapter 11 cases and all related adversary proceedings were reassigned to me from the Honorable Brendan Linehan Shannon. (D.I. 2346).

[2] This Memorandum constitutes the findings of fact and conclusions of law, as required by Fed. R. Bankr. P. 7052. This Court has jurisdiction to decide this claim objection pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

[3] Motions to Disqualify and Terminate the Liquidation Trustee and the Professionals of the Liquidation Trust for Proceeding on Impeached Evidence were filed by Denise Warren (D.I. 2355), Nancy Branigan (D.I. 2356), Mark Olsen (D.I. 2358), Rod Comer (D.I. 2361), Arthur Shelden (D.I. 2362, and amended by D.I. 2380), and Alan Levine (D.I. 2364) (together with the motion filed by Frank Waitkus (D.I. 2354) the "Motions to Terminate," and the former shareholders filing the Motions to Terminate are referred to herein as the "Movants").   The Motions to Terminate are substantially similar to one another.

which a number of the Movants appeared in person or by telephone to present evidence and argument in support of the Motions to Terminate.  For the reasons stated below, the Motions to Terminate will be denied.

Background

On July 8, 2008, the Debtors each filed voluntary chapter 11 petitions in this Court.  On July 6, 2009, the Court entered an Order Confirming the Debtors' Second Amended Chapter 11 Liquidation Plan (the "Confirmation Order") (D.I. 1529). [4]  The effective date of the Plan occurred on July 7, 2009 (the "Effective Date") (D.I. 1533).  The Plan authorized the establishment of a liquidating trust (the "Liquidation Trust") and appointment of Geoffrey L. Berman as liquidation trustee (the "Trustee") to, among other duties, hold the Liquidation Trust Assets, pursue certain causes of action, and make distributions to the Liquidation Trust Beneficiaries (i.e., holders of Allowed General Unsecured Claims) consistent with the terms of the Liquidation Trust Agreement. [5]

On the Effective Date, Class 7 Equity Interests were cancelled.  Holders of Allowed Equity Interests received no distribution under the Plan. [6]  However, the Plan does provide that:

> if prior to the closing of the Chapter 11 Cases the Liquidating Trustee, in consultation with the Creditor Representatives, determines that Residual Equity Assets are available for distribution to Holders of Allowed Equity Interests (meaning that additional assets are available after satisfying in full all other pre- and post-Petition Date claims), then, upon reasonable notice to the Holders of

---

[4] The Debtors' Second Amended Chapter 11 Liquidation Plan dated March 11, 2009 (D.I. 1016) (the "Plan"), Article VI(A)(1).  Capitalized terms not defined herein are defined in the Plan.

[5] In footnote 5 of the Objection, the Trustee avers that "[i]n connection with the Plan and Confirmation Order, the Debtors, Silver Point Finance LLC ("Silver Point") and LG Electronics USA, Inc. as Creditor Representatives (which function as an oversight board for the Liquidation Trust) and the Trustee in his capacity as trustee of the Liquidation Trust, entered into that certain Liquidation Trust Agreement, dated as of July 7, 2009 (the "Liquidation Trust Agreement").

[6] Plan, Article IV(A)(7).

2

Allowed Equity Interests as of the Equity Interest Record Date (which will be March 11, 2009), and to the United States Trustee, the Liquidating Trustee will file a motion with the Bankruptcy Court requesting approval of procedures for making distributions to the Holders of Allowed Equity Interests as of the Equity Interest Record Date. The Debtors do not believe that any assets will be available for such distributions.[7]

As of June 3, 2016, the Trustee reported that he has made a 21% distribution to holders of Allowed General Unsecured Claims.[8] The Trustee also reported that he does not anticipate that Allowed Equity Interests will receive a distribution in the chapter 11 cases.[9]

Discussion

The Liquidation Trust Agreement addresses the circumstances under which the Trustee may be removed, as follows:

The Liquidation Trustee may be removed only (i) by the Creditor Representatives, or (ii) for cause by a Final Order of the Bankruptcy Court, after notice and hearing; *provided, however,* that the Liquidation Trustee may not be removed until a successor Liquidation Trustee has been named or is capable of being named immediately upon such removal. For purposes of removing the Liquidation Trustee, "cause" shall mean gross negligence, breach of fiduciary duty, breach of trust, and reckless or willful mishandling of the Liquidation Trust Assets. [10]

Bankruptcy Code § 324 provides that "[t]he court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause." 11 U.S.C. § 324(a). "Cause" for removal of a trustee is not defined by the Bankruptcy Code, but must be determined on a case-by-case basis.[11] It is questionable whether § 324 applies to a post-confirmation

---

[7] *Id.*

[8] Chapter 11 Status Report, ¶12 (D.I. 2371).

[9] *Id.* at ¶10.

[10] Liquidation Trust Agreement (copy attached as Exhibit A to the Plan) (D.I. 1243-1) at ¶ 3.4.

[11] *Livore v. John W. Hargrave and Assoc.,* No. 08-32423, 2010 WL 1849322, *2 (Bankr. D.N.J. May 6, 2010) citing *In re Reed,* 178 B.R. 817, 821 (Bankr. D. Ariz. 1995).

liquidating trustee appointed pursuant to a plan or trust agreement, but case law discussing this section, along with language from the Liquidation Trust Agreement, provide persuasive reasoning that is helpful to analyze the matter before me.

The Movants assert two main arguments for removal of the Trustee, which they refer to as (i) "lack of standing," which is based on the Movants' assertions about forged documents in the chapter 11 case, and (ii) "lack of due process," which is based on the Movants' assertions about the Trustee's treatment of the former shareholders in this case.

    (1)    "Lack of Standing"

The Movants' lack of standing argument boils down to this: the Trustee's appointment, through the confirmed Plan, is based upon "fabricated numbers backed up by forged documentation." The Movants argue that the Trustee has proceeded with his duties based upon fraudulent information and has not referred the fraudulent information to appropriate authorities. This argument reiterates arguments made in earlier pleadings filed by former shareholders, seeking to invalidate most of the events that have taken place in the chapter 11 cases, including Plan confirmation, on the belief that the First Day Affidavit must be vacated as based upon fraudulent information. As described in Judge Shannon's decision of May 11, 2016:

> The Movant and the Joinder Parties appear to be proceeding on a flawed premise: as best the Court can discern, it is their expectation that if the Court strikes the First Day Affidavit, then everything that has occurred in this chapter 11 case over the past eight years will be undone. In fact, the docket reflects that the Plan was confirmed and went effective nearly seven years ago, claims have been administered, and the Trustee has made significant distributions on those claims. Striking or vacating the First Day Affidavit, even if ordered by this Court, will not affect or unwind these steps and transactions. [12]

---

[12] *In re Syntax-Brillian Corp.*, No. 08-11407 (BLS), 2016 WL 2865095, at *3 (Bankr. D. Del. May 11, 2016) (the "May 2016 Opinion").

The Movants have not provided any evidence to support their allegations that the Trustee was appointed by a Plan that "concealed a massive forgery that was used to implement the SBC Ponzi scam." As evidence of wrongdoing, the Movants, in part, point to the Court's appointment of an Examiner on September 3, 2008 to investigate the Debtors' books and records to determine whether there were potential claims available to the Debtors' estates.[13] The Examiner made an oral report of his findings to the Bankruptcy Court on October 6, 2008.[14] There has been no "concealment" of the Examiner's report because a transcript of the Examiner's oral report was attached as Exhibit V to the Second Amended Disclosure Statement with Respect to Debtors' Second Amended Chapter 11 Liquidating Plan. Consistent with his duties under the Plan, the Trustee has pursued various causes of action, including litigation against former officers and directors of the Debtors.[15]

The Movants also claim that the Trustee has "concealed" the "forgeries" or has denied access to or destroyed forged documents. As my predecessor previously determined, under the terms of the Plan and Liquidating Trust Agreement, the Trustee has taken possession of the Debtors' books and records, including documents that may evidence fraudulent prepetition conduct.[16] In his May 2016 Opinion, Judge Shannon denied a request to compel the Trustee to produce the Debtors' books, records and other materials to the movant (former shareholder Alan

---

[13] *See* D.I. 366.

[14] At the hearing, some Movants requested that the transcript of the Examiner's report be made available, and the Trustee noted that the transcript is available on the docket, since it was an attachment to the Disclosure Statement. *See* Second Amended Disclosure Statement with Respect to Debtors' Second Amended Chapter 11 Liquidating Plan (the "Disclosure Statement") (D.I. 1017), Exhibit V. The Court approved the Disclosure Statement by Order dated March 12, 2009 (D.I. 1020).

[15] *SB Liquidation Trust v. Li, et al.,* Adversary Proceeding No. 08-51830.

[16] May 2016 Opinion at *5. *See also* Confirmation Order (D.I. 1529), ¶22.

Levine) for review, finding that there was no pending proceeding before the Court to which the document request related, and agreeing with the Trustee that costs associated with production would burden the Trust, and, by extension, holders of allowed claims.[17] Thus, the Trustee has not wrongfully denied access to documents in his possession.

Further, the Trustee is required to retain records, files and documents pending further order of the Court on notice to interested parties.[18] The only documents disposed of by the Trustee, after approval by the Court, were certain books and records that were related to the chapter 7 debtor SBC Asset Holding Corp., f/k/a Vivitar Corporation, which were unnecessary to administration of the Liquidation Trust.[19]

      (2)     "Lack of Due Process"

The Movants' "lack of due process" argument asserts that the Trustee has not treated all former shareholders equally. One source of this argument is the Settlement Agreement Resolving Shareholder Claims (the "Shareholder Settlement") entered into on or about October 2, 2013, between the Trustee and certain former shareholders (the "Settling Shareholders") to eliminate ongoing litigation expenses and to settle pending litigation. The Shareholder Settlement was not presented to the Court for approval because it was a post-confirmation settlement within the authority of the Trustee.[20] Among other terms, the Shareholder Settlement provided for a $120,000 settlement payment to the Settling Shareholders in return for a complete release of the

---

[17] May 2016 Opinion at *5.

[18] Confirmation Order, ¶22.

[19] Order dated June 20, 2014 (D.I. 2264).

[20] May 2016 Opinion at *2.

Estate Parties[21] from all claims and causes of action concerning, arising from or related to the Debtors, the chapter 11 cases, the Plan, the Confirmation Order, the Liquidation Trust or its assets, the Lender Trust or its assets, the Liquidation Trust Agreement, the Lender Trust Agreement, or the Trustee.

The Movants argue that the Trustee's settlement with certain former shareholders was unfair because all shareholders were not treated equally. Further, at the June 16, 2016 hearing, one Movant referred to the settlement payments as "hush money." The Trustee argues in response that, pursuant to authority granted to the Trustee under the Liquidation Trust Agreement, he entered into the settlement in the sound exercise of his business judgment to eliminate ongoing litigation expenses. The settlement payments were made in exchange for complete releases of the Estate Parties (as defined in the settlement agreement).

Judge Shannon has already determined that the Trustee had authority to enter into the settlements without Court approval or disclosure to other shareholders and accepted the Trustee's position that the settlement was entered into to stop the burn of legal fees associated with those litigants.[22] The May 2016 Opinion was not appealed and is final. Even if a reconsideration request was timely filed, the Movants have failed to provide any reason to re-visit that decision.

---

[21] The "Estate Parties" are defined in the Shareholder Settlement as "collectively and individually, the following persons and entities: (i) the Liquidation Trust, (ii) the Lender Trust, (iii) the Trustee, (iv) Pepper Hamilton LLP, (v) Development Specialists, Inc., (vi) Diamond McCarthy LLP, (vii) the Creditor Representatives (as such term is defined in the Liquidation Trust Agreement), in their capacities as such, (viii) all other professionals, consultants, advisors and employees retained by the Liquidation Trust, the Lender Trust or the Trustee, and (ix) each of the respective past, present and future affiliates, predecessors, successors, assigns, shareholders, officers, directors, partners, employees, members, agents, heirs, executors, administrators, attorneys, consultants, advisors, and other representatives of the persons and entities listed in (i) through (viii) of this paragraph."

[22] May 2016 Opinion at *2.

Another source of the "lack of due process" argument are the requests made by a number of former shareholders to the Trustee for letters about the Debtors' prepetition fraud for use by those former shareholders in asserting theft losses for federal income tax purposes. The Movants argue that the Trustee violated due process rights of former shareholders by providing these letters only to those former shareholders who requested the letters. The Trustee argues in response that he takes no position on whether any shareholder's claim for a tax theft loss will be successful with the Internal Revenue Service. The Trustee states that he has been willing to provide (and has provided) such a letter to any former shareholder who requests one. However, the Trustee also argues that it would be burdensome to the Trust to provide these letters to approximately 29,000 former shareholders. Upon consideration of the Trustee's duties under the Plan and the Liquidation Trust Agreement, I agree that the Trustee's position to provide those letters only to former shareholders who request them is entirely reasonable and in the best interest of the Allowed Claim Holders, who are the beneficiaries of the Liquidation Trust.

Conclusion

In conclusion, a party seeking removal of a trustee must prove actual injury or fraud.[23] As recognized in Judge Shannon's May 2016 Opinion, the Court is aware that the former shareholders suffered harm on account of the collapse of the Debtor companies,[24] but the Movants have not proved that they have been harmed by the actions of the Trustee or his professionals. They have not provided any evidence that the Trustee has failed to perform his duties under the Plan and the Liquidation Trust Agreement. There is no evidence of gross

---

[23] *Livore,*, 2010 WL 1849322 at *2 citing *In re Martin,* 817 F.2d 175, 181 (1ˢᵗ Cir. 1987) and *In re Cee Jay Discount Stores, Inc.,* 171 B.R. 173, 175 (Bankr. E.D.N.Y. 1994).

[24] May 2016 Opinon at *2.

negligence, breach of fiduciary duty, breach of trust, and reckless or willful mishandling of the Liquidation Trust Assets by the Trustee.  Accordingly, the Motions to Terminate must be denied.

An appropriate Order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

DATED:  July 20, 2016

9