IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| SYNTAX-BRILLIAN CORPORATION., *et al.*, | : | Chapter 11 |
| | : | Bankr. Case No. 08-11407 (KJC) |
| Debtors. | : | (Jointly Administered) |
| | : | |
| AHMED AMR, | : | |
| Appellant, | : | Civ. No. 13-337 (GMS) |
| | : | |
| v. | : | |
| | : | |
| GREENBERG TRAURIG LLP, *et al.*, | : | |
| | : | |
| Appellees. | : | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Presently before the court is the *pro se* appeal (D.I. 1) of Ahmed Amr ("Appellant"), a former shareholder of the above-captioned Chapter 11 debtors ("Debtors"), from a Bankruptcy Court Memorandum Order (B.D.I. 2107)[1] ("Reconsideration Order"), which denied Appellant's Motion to Reconsider and Vacate Orders (B.D.I. 2001) ("Motion to Reconsider") regarding the Bankruptcy Court's prior (1) Order Denying Motion to Compel (B.D.I. 1996), and (2) Order Denying Motion to Sanction Nancy Mitchell and Greenberg Traurig LLP (B.D.I. 1997). The Reconsideration Order is the only order on appeal, and the parties have completed briefing on the merits. (*See* D.I. 43, 45, 50.)

On September 29, 2016, the court issued a Memorandum Opinion and Order denying numerous motions and requests for relief filed by Appellant and other similarly aggrieved former

---

[1]The bankruptcy docket, captioned *In re Syntax-Brillian Corporation, et al.*, Case No. 08-11407 (KJC) (Bankr. D. Del.), is cited herein as "B.D.I. ___."

shareholders, both related and unrelated to this appeal (the "Shareholder Motions").[2] (*See* D.I. 73, 74.) Following the ruling on the Shareholder Motions, on November 18, 2016, Appellant filed *Ahmed Amr's Motion to Recuse Judge Gregory Sleet for Abuse of Power, Abuse of Jurisdiction, Racketeering, Proceeding on False Evidence, False Utterances About Forged Documentation and Failure to Report Forgeries to Law Enforcement Authorities, Violations of Appellant's Due Process Rights and For Allowing Judge Brendan Shannon to Ghost Write His Opinions* (D.I. 75) ("Recusal Motion"). This memorandum opinion addresses the Recusal Motion, Appellant's Requests for Judicial Notice (D.I. 21, 25), and the appeal of the Reconsideration Order.

## II.     BACKGROUND

The court assumes familiarity with the history of the Debtors' bankruptcy cases. The factual background of this case is set forth in prior opinions by the Bankruptcy Court.[3] The following background is only a summary of the facts relevant to the appeal.

### A.  The Chapter 11 Cases

This appeal arises from the Chapter 11 cases of Syntax-Brillian Corporation and its debtor affiliates. Prior to commencing these cases, the Debtors were in the business of selling "Olevia" brand flat screen televisions through retail distribution channels such as Target. The televisions were sourced and assembled in Asia and shipped to the United States. The record reflects that the Debtors were victims of a large scale fraud perpetuated by their pre-bankruptcy management and

---

[2] The Shareholder Motions included: Appellant's purported Motion for Summary Judgment Affirming Appellant's Standing to Sanction Nancy Mitchell and Greenberg Traurig (D.I. 23); Motion for an Emergency Injunction Directing the Secret Service to Seize and Confiscate Forged Documents Currently in the Custody of the Liquidation Trustee (D.I. 38); and Motion to Impeach Nancy Mitchell's and Greenberg Traurig's Evidence (D.I. 70). Eight former shareholders have filed separate *pro se* Motions to Intervene Due to Bankruptcy Fraud, Spoliation of Evidence and Concealment of Forgery. (D.I. 47, 48, 49, 51, 52, 53, 54, 55.)

[3] *See SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, No. 08-11407 (BLS), 2011 WL 3101809 (Bankr. D. Del. July 25, 2011); *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, No. 08-11407 (BLS), 2013 WL 153831 (Bankr. D. Del. Jan. 15, 2013), *In re Syntax-Brillian Corp.,* 551 B.R. 156 (Bankr. D. Del. 2016); *see also SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, 573 Fed. Appx. 154 (3d Cir. 2014).

certain of their vendors or business partners in the Far East. As a result of losses suffered due at least in part to such fraud, the Debtors' business collapsed in the spring of 2008, and these cases were commenced on July 8, 2008 ("Petition Date"), with the stated intention of effecting a sale of substantially all assets under section 363 of the Bankruptcy Code. (*See* B.D.I. 1.) On August 12, 2008, the Bankruptcy Court entered an order authorizing the Debtors' retention and employment of the law firm of Greenberg Traurig, LLP ("GT") as its bankruptcy counsel. (B.D.I. 236.) The record reflects that Nancy A. Mitchell was one of the GT attorneys that lead the Debtors' representation. Following the Petition Date, the Bankruptcy Court approved sale procedures and bid protections for a proposed stalking horse bidder. (B.D.I. 210.) No competing bidders appeared, and the sale was approved by the Bankruptcy Court on August 22, 2008 (B.D.I. 317.) The stalking horse bidder subsequently failed to close on the sale, however, and the Debtors promptly shut down operations.

The Office of the United States Trustee ("UST") moved for the appointment of an examiner to investigate, among other things, substantial allegations of fraud and misconduct by the Debtors' former officers and directors, as well as prepetition business dealings between the Debtors and their Asian suppliers and business partners. (*See* B.D.I. 112.) The UST's motion was supported by a number of shareholders, including the Appellant. (*See* B.D.I. 276.) Specifically, Appellant contended that he had undertaken his own investigation and had uncovered substantial evidence of wrongdoing by the Debtors' prepetition management and numerous entities in the Far East. The UST's motion was opposed by the Debtors (B.D.I. 133, 150), the Official Committee of Unsecured Creditors ("Committee"), and by Silver Point Finance. LLC ("Silver Point"), the Debtors' DIP lender and primary prepetition secured creditor, on the bases that (i) the Debtors and Committee were capable of performing any necessary investigation, and (ii) the estates had insufficient time

3

and money to allow for a court-ordered investigation. The Bankruptcy Court overruled these objections and appointed an examiner by Order dated September 3, 2008. (B.D.I. 366.) The Bankruptcy Court further directed that the examiner meet with Appellant to obtain the benefit of his efforts. (*See* B.D.I. 416.)

The examiner completed his investigation and reported back to the Bankruptcy Court at a hearing held on October 22, 2008. The examiner reported that there was substantial reason to believe that the Debtors had been defrauded by their vendors or business partners in the Far East, and that the Debtors' prepetition management was either complicit in the wrong doing or negligent in allowing it to occur. The examiner recommended further investigation and the commencement of litigation on behalf of the Debtors' estates. On November 26, 2008, the Committee obtained authority from the Bankruptcy Court to sue and promptly commenced an adversary proceeding against numerous parties.[4]

The Debtors filed a proposed plan of liquidation. On March 12, 2009, the Bankruptcy Court approved the Debtor's Second Amended Disclosure Statement (B.D.I. 1017, 1020) (the "Disclosure Statement"). The Disclosure Statement made fulsome disclosure regarding pre-petition and post-petition investigations and claims of the Debtors against a variety of parties, including prior management and trading partners. The Disclosure Statement also specifically stated that recovery for shareholders was unlikely. (*See* B.D.I. 1017 at 40.) On July 6, 2009, the Bankruptcy Court entered an order (B.D.I. 1529) (the "Confirmation Order") confirming the Debtors' Second Amended Chapter 11 Liquidation Plan (B.D.I. 1016) (the "Plan"). The effective date of the Plan occurred on July 7, 2009 (the "Effective Date"). (*See* B.D.I. 1533.) On August 6, 2009, GT filed its final application for compensation and reimbursement of expenses as counsel

---

[4] *SB Liquidation Trust v. Li, et al.*, Adv. Proc. No. 08-51830 (KJC) (Bankr. D. Del.)).

4

to the Debtors for the period from July 8, 2008 through July 7, 2009 (B.D.I. 1583), which was approved by the Bankruptcy Court on September 10, 2009 (B.D.I. 1608) ("Final Fee Order").

Pursuant to the Plan, on the Effective Date, the Debtors' attorneys were exculpated from "any liability for any post-petition action taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtors and/or relating to the Chapter 11 Cases" with the exception of acts or omissions determined in "a Final Order to have constituted gross negligence or willful misconduct . . .". (Plan, Article XI.A.) The Plan also authorized the establishment of a liquidating trust (the "Liquidation Trust") and appointment of a liquidation trustee ("Trustee") to, among other duties, hold the Liquidation Trust Assets, pursue Causes of Action,[5] and make distributions to beneficiaries consistent with the terms of the Liquidating Trust Agreement. (*See* Plan, Article VI.A.1.) The Debtors' assets, including rights to Causes of Action, were deemed to have been automatically transferred to the Liquidation Trust on the Effective Date. (*See id.*) Finally, Class 7 Equity Interests were cancelled on the Effective Date, and holders of Allowed Equity Interests did not receive any distribution under the Plan. The Plan provided that:

> If prior to the closing of the Chapter 11 Cases the Liquidating Trustee . . . determines that Residual Equity Assets are available for distribution to Holders of Allowed Equity Interests (meaning that additional assets are available after satisfying in full all other pre- and post-Petition Date claims), then, upon reasonable

---

[5] The Plan defines "Causes of Action" as:

all Claims, actions, causes of action, choses in action, suits, debts, dues, damages, judgments, third-party claims, counterclaims, and crossclaims (including, but not limited to, all claims arising under state, federal or other nonbankruptcy law, and any avoidance, recovery, subordination or other actions against insiders and/or any other Persons or Entities under the Bankruptcy Code, including Sections 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or otherwise) of the Debtors or any Debtor, the Estates or any Estate (including, but not limited to, those actions described in Article XII hereof) that are or may be pending or existing on the Effective Date, or which are based on any facts or circumstances occurring on or before the Effective Date, against any Person or Entity, based on law or in equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the Effective Date, and including the Unknown Causes of Action, but shall not include any Sale Causes of Action, and shall not include any Causes of Action against [Silver Point Finance, LLC], the DIP Lenders, the Postpetition Agent, the Pre-Petition Lenders, the Pre-Petition Agent and/or their respective affiliates, officers, directors and agents.

Plan, Article I.C.19.

> notice to the Holders of Allowed Equity Interests . . . the Liquidating Trustee will
> file a motion with the Bankruptcy Court requesting approval of procedures for
> making distributions to the Holders of Allowed Equity Interests . . . The Debtors
> do not believe that any assets will be available for such distributions.

(Plan, Article IV.A.7.) Thus, although the Plan provided that shareholders could potentially

receive a distribution on account of their stock holdings in the Debtors, both the Plan and federal

law expressly provide that no distributions to shareholders can be made until all allowed claims

are paid in full. *See* 11 U.S.C. § 510(b).

Consistent with his duties under the Plan, the Trustee has pursued various Causes of

Action, including litigation against former officers and directors of the Debtors. (*See* B.D.I. 2413

at 5.) The Trustee also conducted an investigation into possible claims against Appellees, which

resulted in a comprehensive settlement pursuant to Federal Rule of Bankruptcy Procedure 9019

between the Trusts and Appellees, approved by the Bankruptcy Court on February 2, 2012 (B.D.I.

1976) ("Settlement Order"). The Settlement Order settled and released any and all claims arising

from the pre-petition conduct of Appellees, and, to the extent not already released or exculpated

under the Exculpation Provision of the Plan, any claims arising from the post-petition conduct of

Appellees. *See id.* As of June 3, 2016, the Trustee reported that a 21% distribution has been made

to holders of Allowed General Unsecured Claims. (*See* B.D.I. 2371, ¶ 12.) The Trustee also

reported that he does not anticipate that holders of Allowed Equity Interests will receive a

distribution in the Chapter 11 cases. (*See id.* at ¶ 10.)

### B. The Sanctions Motion and Turnover Motion

On December 20, 2011, over two years after GT ceased performing in their role as counsel

to the Debtors, Appellant filed a motion to sanction GT (B.D.I. 1950) (the "Sanctions Motion")

and a motion to compel the production of certain documents (B.D.I. 1951) (the "Turnover

Motion"). Appellant's Sanctions Motion sought various relief based on GT's alleged fraud upon

6

the court, including disgorgement of GT's fees, sanctions for alleged violations of discovery rules, a compensatory award of $2 million in favor of "*pro se* litigants," and serious sanctions, including disbarment, for alleged violations of the Federal Rules of Bankruptcy Procedure and the Delaware Lawyers' Rules of Professional Conduct. (*See* B.D.I. 1950.) The Turnover Motion sought an order compelling the Liquidation Trust and GT to release and/or turn over the "full inventory" of the Debtors' Board of Director meeting minutes. (*See* B.D.I. 1951.) On January 12, 2012, the Liquidation Trust filed an Objection to these motions. (B.D.I. 1957.)

Before the Bankruptcy Court could rule, more pleadings followed. On January 26, 2012, Appellant filed a Request for Judicial Notice in Support of Motion to Sanction Nancy Mitchell and Greenberg Traurig and in Support of His Objection to Trustee's Settlement Agreement With Greenberg Traurig. (B.D.I. 1967.) GT filed its objection to the Sanctions and Turnover Motions on February 8, 2012. (B.D.I. 1997.) On February 10, 2012, Appellant filed a Request for Admissions (the "Discovery Requests"). (B.D.I. 1982.) On February 15, 2012, the Bankruptcy Court conducted a hearing with respect to the Turnover Motion, the Sanctions Motion, and the related objections of the Trust and GT. At the conclusion of the hearing, the Bankruptcy Court took the matters under advisement.

### C. Reconsideration Order and Appeal

On March 2, 2012, the Bankruptcy Court entered an order denying the Turnover Motion on the bases that (1) the Bankruptcy Court "had previously ruled on, and denied, [Appellant's] request for the documents or information sought via the [Turnover Motion] on several occasions" and (2) "the purpose of the [Turnover Motion] is "to develop facts relating to potential claims that belong, not to [Appellant], but to the estates and to the Trusts created under the confirmed Plan." (B.D.I. 1996.) On the same date, the Bankruptcy Court entered an order denying the Sanctions

7

Motion, on the bases that the Bankruptcy Court had "previously approved a comprehensive settlement between the Trusts and [GT] by order dated February 2, 2012 [Docket No. 1974]" and that "the predicate for the [Sanctions Motion] rests upon claims that have been settled or released by the confirmed Plan or by [Settlement Order]." (B.D.I. 1997.)[6]

On March 6, 2012, Appellant filed a Motion for a Continuance of the Hearing to Sanction Mary [sic] Mitchell (B.D.I. 2004) (the "Motion for Continuance"). On March 6, 2012, the Bankruptcy Court entered an order denying the Motion for Continuance (B.D.I. 2000) because there was "no legal basis upon which [Appellant] may assert standing to seek the relief sought in the [Sanctions Motion]" and because the Court previously denied the relief requested in the Sanctions Motion due to Appellant's lack of standing, among other things. On March 8, 2012, Appellant filed the Reconsideration Motion. (B.D.I. 2001.) Through the Reconsideration Motion, Appellant asked the Bankruptcy Court to vacate its orders denying the Sanctions Motion and the Turnover Motion. On April 11, 2012, and October 3, 2012, the Bankruptcy Court held hearings on the Reconsideration Motion. At the April 11, 2012 hearing on the Reconsideration Motion, Appellant stated that he "is not seeking any relief from the estate and is not asserting any cause of action from Nancy Mitchell's and GT's pre-petition conduct. The movant is only asserting causes of action related to GT's and Nancy Mitchell's post-petition misconduct as it applied to the movant." (B.D.I. 2054, 4/11/2012 Hr'g. Tr. at 42:5-9.) The Bankruptcy Court took the matter under advisement and, on December 7, 2012, entered the Reconsideration Order which denied all relief sought in the Reconsideration Motion. (B.D.I. 2107.) Rather than appeal the

---

[6] Based on this ruling, Appellees took the position that the Discovery Requests had been rendered moot in light of the court's denial of the Turnover Motion and Sanctions Motion. (*See* B.D.I. 2087, 10/3/12 Hr'g. Tr. at 84:14-22.)

8

Reconsideration Order at this time, Appellant filed a series of motions seeking to alter or amend the Reconsideration Order.[7]

On January 29, 2013, Appellant filed a Notice of Appeal with respect to the Reconsideration Order. (D.I. 1.) The Notice of Appeal was filed after the statutory deadline, and Appellee's motion to dismiss the appeal as untimely (D.I. 6) was granted on January 12, 2015. (*See* D.I. 30.) The order dismissing the appeal was vacated by order of the Court of Appeals for the Third Circuit dated June 26, 2015. (*See* D.I. 34.)

### D. **The Shareholder Settlement and Continued Litigation**

As a prepetition holder of the Debtors' common stock, Appellant has actively participated in the Chapter 11 proceedings, making numerous appearances in court and numerous *pro se* requests for relief. Recognizing the importance of Appellant's input, the Bankruptcy Court previously awarded Appellant $6,700 pursuant to 11 U.S.C. § 503(b). Other former shareholders have also made numerous *pro se* filings in the Chapter 11 cases, seeking relief post-confirmation. (*See* B.D.I. 2393.) The court is well aware of the losses suffered by shareholders on account of the Debtors' collapse. Judge Shannon recognized the wrongs suffered by the Debtors' former shareholders:

> Syntax was the victim of a fraud, apparently perpetrated by certain members of its management team as well as its suppliers in the Far East. The Court is acutely aware of the suffering endured by Syntax's shareholders on account of the collapse of the company. The Court's sympathy, however, does not change the economic

---

[7] On December 21, 2012, Appellant filed his first and second motions to alter or amend the Reconsideration Order (the "First and Second Motions to Alter or Amend"). (B.D.I. 2108, 2109.) Appellant then filed a third motion to alter or amend the Reconsideration Denial on January 9, 2013 (the "Third Motion to Alter or Amend"). (B.D.I. 2111.) The Bankruptcy Court entered an order on January 14, 2013 denying the First, Second and Third Motions to Alter or Amend (the "Amendment Denial Order"). (B.D.I. 2114.) The deadline to appeal the Amendment Denial Order was January 25, 2013. On January 15, 2013, Appellant filed a fourth and untimely motion to alter or amend the Reconsideration Denial (the "Fourth Motion to Alter or Amend"). (B.D.I. 2117.) The Fourth Motion to Alter or Amend was filed twenty-five days after the deadline to do so. (*See id.*) The following day, January 16, 2013, the Bankruptcy Court entered an order denying the Fourth Motion to Alter or Amend (the "Second Amendment Denial Order"). (B.D.I. 2119.)

reality and legal principles in play. Under the Plan, there is not presently a return for Syntax's shareholders, and there is not likely to be a return in the future.

Regrettably, shareholders of companies that file for bankruptcy relief often (and perhaps typically) see their interests wiped out. This is the case even where the shareholders purchased their shares in reliance upon fraudulent or misleading information: Section 510(b) of the Bankruptcy Code specifically provides that claims arising from the purchase or sale of stock in a debtor are subordinated to all other claims.

Consequently, the result in this case is neither unusual nor inconsistent with well-settled legal principles.

*Syntax-Brillian Corp.,* 551 B.R. at 158. Notwithstanding, the post-confirmation docket reflects a deluge of filings made by Appellant and other former shareholders seeking to unwind the Chapter 11 liquidation and other relief.

Following the filing of the appeal, on or about October 2, 2013, the Trustee entered into a settlement ("Shareholder Settlement") with certain former shareholders, including Appellant ("Settling Shareholders") to eliminate ongoing litigation expenses and to settle pending litigation.[8] The Shareholder Settlement, *inter alia*, provided for a $120,000 settlement payment to the Settling Shareholders, including a substantial payment to Appellant. In return, the Settling Shareholders agreed to a complete release of the Estate Parties[9] from all claims and causes of action concerning, arising from, or related to the Debtors, the Chapter 11 cases, the Plan, the Confirmation Order, the Liquidating Trust, its assets, or the Trustee. On October 24, 2013, in accordance with the terms

---

[8] The Shareholder Settlement was not presented to the Bankruptcy Court for approval or disclosed to other shareholders because it was a post-confirmation settlement within the authority of the Trustee. *See Syntax-Brillian,* 551 B.R. at 158-59. However, the Trustee advised the Court that the confidential settlement was entered into for the purpose of bringing peace for the Trust and stopping the burn of legal fees associated with dealing with the litigants. *See id.* at 159.

[9] The Estate Parties are defined in the Shareholder Settlement as "collectively and individually, the following persons and entities: (i) the Liquidation Trust, (ii) the Lender Trust, (iii) the Trustee, (iv) Pepper Hamilton LLP, (v) Development Specialists, Inc., (vi) Diamond McCarthy LLP, (vii) the Creditor Representatives (as such term is defined in the Liquidation Trust Agreement), in their capacities as such, (viii) all other professionals, consultants, advisors and employees retained by the Liquidation Trust, the Lender Trust or the Trustee, and (ix) each of the respective past, present and future affiliates, predecessors, successors, assigns, shareholders, officers, directors, partners, employees, members, agents, heirs, executors, administrators, attorneys, consultants, advisors, and other representatives of the persons and entities listed in (i) through (viii) of this paragraph."

of the Shareholder Settlement, the Joint Notice of Withdrawal of Certain Shareholder Claims and

Pleadings (B.D.I. 2245) ("Notice of Withdrawal"), signed by Appellant, among others, was filed

with the Bankruptcy Court. Pursuant to the Notice of Withdrawal, the Settling Shareholders

(including Appellant) acknowledged and agreed that:

> . . . all pending motions, objections, complaints, responses and other pleadings
> filed by the Shareholders in the Chapter 11 Cases (collectively, the "Pleadings")
> against the Estate Parties are hereby withdrawn with prejudice . . . provided,
> however, that nothing in this Notice shall release, waive or affect in any way any
> Pleading filed by Ahmed Amr in the Chapter 11 Cases against Greenberg Traurig
> LLP or Nancy A. Mitchell solely to the extent related to the lawsuit styled *Ahmed
> Amr v. Greenberg Traurig, LLP, et al.,* currently pending before the United States
> District Court for the District of Delaware, Case No. 13-337-GMS.

The Settling Shareholders (including Appellant) further acknowledged and agreed that:

> Neither they, nor any person or entity affiliated with or controlled by any of them,
> or on whose behalf any of them are acting or may act pursuant to any agreement,
> arrangement or applicable law, shall be (i) parties-in-interest in the Chapter 11
> Cases or appear at any hearing in the Chapter 11 Cases; (ii) have any interest of any
> kind, whether contingent, beneficial or otherwise, in the Liquidation Trust; or (iii)
> hereinafter acquire directly or indirectly any interest of any kind, whether
> contingent, beneficial or otherwise, in the Liquidating Trust. The Shareholders
> shall not advise, encourage or otherwise assist any person or entity in filing or
> asserting any claim, right, demand, pleading or allegation of any kind in the Chapter
> 11 Cases or against any of the Estate Parties.

(B.D.I. 2245.)

Notwithstanding his entry into the Shareholder Settlement, and his receipt of settlement

funds thereunder, the record reflects that Appellant continued to file motions, objections, and

appear in the Chapter 11 cases. As the Bankruptcy Court recently observed:

> What is unusual about this case is the amount of time and resources that
> shareholders have spent pursuing a recovery. As noted, the Plan was confirmed
> nearly seven years ago, and the Disclosure Statement accompanying the Plan
> specifically stated that recovery for shareholders was unlikely.

> Certain shareholders continued to persist in post-confirmation litigation, to the
> point that the Trustee deemed it necessary in 2013 to enter into a confidential cash
> settlement with these several shareholders . . . .

11

At the hearing on the matter presently *sub judice,* the Court was distressed to learn that [Appellant] Mr. Ahmed Amr, one of the shareholders who enjoyed a substantial cash payment under the above-described confidential settlement, is actively engaging in or supporting litigation against the Trust.   Even worse, however, was the disclosure during the hearing that Mr. Amr has been dunning other unfortunate Syntax shareholders (who have not received the cash payments Mr. Amr has enjoyed) for contributions to subsidize his costs associated with continuing his fight against the Trust.

The bottom line is this: the decision to invest in Syntax turned out to be a bad idea, and the investment was effectively lost in 2008. While deeply unfortunate, this circumstance is neither remarkable nor fixable by this Court.  But it appears that the shareholders' suffering has been compounded by litigants—and specifically Mr. Amr—who have dragged out this process for so many years and kept false hopes alive for a substantial return out of this bankruptcy case.

*Syntax-Brillian,* 551 B.R. at 158-59 (footnotes omitted).

On May 16, 2016, Appellant filed the Motion of Ahmed Amr to Proceed Qui Tam under the False Claims Act (B.D.I. 2329) ("Qui Tam Motion").   By order dated May 17, 2016, the Chapter 11 cases were reassigned to the Honorable Kevin J. Carey.  (*See* B.D.I. 3246.)  On June 16, 2016, following a hearing on the Qui Tam Motion, Judge Carey determined that Appellant was subject to the Shareholder Settlement and Notice of Withdrawal and thus had no standing to appear or be heard on any matter in the Chapter 11 cases.  (*See* B.D.I. 2406 at 4.)[10]  On August 31, 2016, in response to an additional pleading made by Appellant, the Bankruptcy Court entered an order reiterating that, based on the Shareholder Settlement and the Notice of Withdrawal, Appellant "does not have standing to appear and be heard in any matter in this chapter 11 case."  (B.D.I. 2423.)  The docket reflects that the shareholders have continued to file pleadings in the Bankruptcy

---

[10] Appellant subsequently argued that he had withdrawn from the Shareholder Settlement.  (*See id.*)  The Bankruptcy Court advised Appellant that if he believed that there were grounds for disputing that the is bound by the Shareholder Settlement, such arguments must be set forth in a separate motion filed with the Bankruptcy Court so that parties will have the opportunity to respond.  (*Id.* at 4, n.9.)  As of the date hereof, the docket reflects that Appellant has filed no such motion.

12

Court in an attempt to "undo" the Chapter 11 cases, which requests burden general unsecured creditors who bear the expense of responding to the litany of motions out of limited estate funds.[11]

### III.   JURISDICTION

The court has appellate jurisdiction over all final orders and judgments from the Bankruptcy Court. *See* 28 U.S.C. § 158(a)(1). An "order denying reconsideration is final if the underlying order is final and together the orders end the litigation on the merits." *U.S. v. Monahan (In re Monahan)*, 497 B.R. 642, 646 (1st Cir. B.A.P. 2013) (internal citation omitted). Because the underlying orders denying the Turnover Motion and Sanctions Motion meet these criteria, the court has jurisdiction over the appeal of the Reconsideration Order. *See id.*

### IV.   RECUSAL MOTION

Recusal is governed by 28 U.S.C. §§ 144 and 455. Section 144 provides that "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein." 28 U.S.C. § 144. Appellant attached to the Recusal Motion a 48-page, unsigned "Certification that Syntax-Brillian was a Ponzi Scam That Could Not Legally Be Reorganized Into a Legitimate Enterprise and That Was Not Eligible for Chapter 11 Protection." (*See* D.I. 75, Ex. B.) The docket reflects that no separate affidavit was filed in support of the Recusal Motion.

As a threshold matter, it is the responsibility of the district judge against whom an affidavit is filed to assess the legal sufficiency of the affidavit. *U.S. v. Townsend*, 478 F.2d 1072, 1073 (3d

---

[11] On October 21, 2016, former shareholder Denise Warren filed a motion in the Bankruptcy Court to recuse Judge Carey. (*See* B.D.I. 2439.) The format of the motion is virtually identical to countless pleadings filed by Appellant in the Bankruptcy Court. By order of the Bankruptcy Court, a hearing on Ms. Warren's motion is scheduled for December 22, 2016. Ms. Warren's in person attendance is required so that she may testify in support of the motion and also be subject to cross-examination on matters related to the motion, including, without limitation, whether she is preparing her own pleadings or, as an objection filed by the Liquidation Trust suggests, the Appellant is "continuing to ghost write pleadings he is not permitted to file himself." (*See* B.D.I. 2443.)

Cir. 1973) (stating that the mere filing of an affidavit "does not automatically disqualify a judge"). The United States Court of Appeals for the Third Circuit has held that the challenged judge must determine only the sufficiency of the affidavit, not the truth of the assertions. *Mims v. Shapp*, 541 F.2d 415, 417 (3d Cir. 1976). An affidavit is legally sufficient if the facts alleged therein: (1) are material and stated with particularity, (2) would convince a reasonable person that a bias exists, and (3) evince bias that is personal, as opposed to judicial in nature. *U.S. v. Thompson*, 483 F.2d 527, 528 (3d Cir. 1973).

Construing these pleadings liberally,[12] and assuming that the unsigned certification is sufficient to meet the requirements of section 144, it is evident that Appellant is using the Recusal Motion to reassert his failed legal theory: that because there is evidence of fraud committed by Debtors' management and vendors, neither this court nor the Bankruptcy Court had jurisdiction over the Debtors' Chapter 11 cases, the liquidation must be somehow "undone," and the lawyers who represented the Debtors in their Chapter 11 cases must be sanctioned. (*See e.g.*, D.I. 75 at 3). The Recusal Motion, which follows several motions for recusal of the Bankruptcy Court judges,[13] takes this theory a step further, alleging that this court's failure to grant the relief sought in the Shareholder Motions makes this court complicit in "racketeering." (*See id.* at 2.) However, the Recusal Motion and attached certification contain no factual allegations of personal bias or prejudice, either against Appellant or in favor of the Debtor, GT, or any adverse party. Rather, it is evident that Appellant's allegations of bias consist of subjective conclusions and disagreements with this court's legal rulings on the Shareholder Motions, which are insufficient to warrant recusal. *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1356 (3d Cir. 1990) (holding that, to

---

[12] "A document filed *pro se* is to be liberally construed." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks omitted).
[13] *See* B.D.I. 753, 1776, 2439.

be legally sufficient, an affidavit must contain more than mere conclusory allegations); *see also*
*Cooney v. Booth*, 262 F. Supp. 2d 494, 502 (E.D. Pa. 2003) (holding that opinions and conclusions
based upon suspicion, conjecture, and speculation are legally insufficient to warrant recusal).

The Recusal Motion, which is replete with accusations concerning the integrity of this court
and the Bankruptcy Court, lacks any factual allegations of personal bias or prejudice. Appellant's
primary contention is that the court allowed Judge Shannon to "ghost write" the memorandum
opinion and order denying the Shareholder Motions. *(See* D.I. 75 at 2, 7.) According to Appellant,
the court has "outsourced" its work to the bankruptcy judge formerly presiding over the chapter
11 cases, "who has a vested interest in derailing this appeal." *(See id.* at 2, 7, 10.) In support of
this contention, Appellant argues that the memorandum opinion contained excerpts of a prior
Bankruptcy Court opinion entered by Judge Shannon. *(See id.)* However, those excerpts, which
merely provided background on the Chapter 11 cases and summarized the proceedings to date,
were clearly designated as quotations and properly cited to the federal bankruptcy reporter. *(See*
D.I. 73 at 5-6 (quoting *Syntax-Brillian Corp.*, 551 B.R. at 158-59.)) Appellant also makes repeated
allegations that the court is vested in "burying evidence" of forged documents which could be used
to support criminal actions. *(See e.g.,* D.I. 75 at 5.) This belief is apparently based on the court's
prior ruling, in connection with the Shareholder Motions, that there was no law or precedent upon
which the court might order the Secret Service or FBI to seize documents in the possession of the
Trustee, and that the denial of any such relief by the Bankruptcy Court, if sought, was not part of
the order on appeal. *(See* D.I. 73 at 16). Based on this and other adverse rulings on the Shareholder
Motions, Appellant alleges that the undersigned "has willfully refused to uphold the Judicial
Machinery of the Court," "contributed to the absolute lack of integrity of the proceedings," and
"has demonstrated his gross indifference to the egregious violations of the federal rules of

15

evidence." (*See* D.I. 75 at 10.)    Appellant, however, offers no evidence in support of these

allegations apart from adverse rulings on his appeal, and the Third Circuit has repeatedly observed

that "a party's displeasure with legal rulings does not form an adequate basis for recusal."

*Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000).    The court

finds that the Recusal Motion and certification lack factual allegations of personal bias or prejudice

that are material and stated with particularity.    Thus, Appellant has not satisfied the requirements

of 28 U.S.C. § 144.

Section 455 provides that a judge is required to recuse himself "in any proceeding in which

his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).    The test for recusal under

section 455(a) is whether a "reasonable person, with knowledge of all the facts, would conclude

that the judge's impartiality might reasonably be questioned," *In re Kensington Int'l Ltd.*, 368 F.3d

289, 296 (3d Cir. 2004), not *"*whether a judge actually harbors bias against a party," *U.S. v.

Kennedy,* 682 F.3d 244, 258 (3d Cir. 2012).    Under § 455(b)(1), a judge is required to recuse

himself "[w]here he has a personal bias or prejudice concerning a party."    Under either subsection

of section 455, the bias necessary to require recusal generally must derive from a source outside

of the official proceedings. *See Liteky v. U.S.*, 510 U.S. 540, 554 (1994); *Selkridge v. United of

Omaha Life Ins. Co.*, 360 F.3d 155, 167 (3d Cir. 2004) ("beliefs or opinions which merit recusal

must involve an extrajudicial factor").    Hence, "judicial rulings alone almost never constitute a

valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555.

It is evident from the Recusal Motion that Appellant takes exception to this court's prior

dismissal of the appeal and the ruling on the Shareholder Motions, and this serves as his only basis

to seek recusal. Without any factual support, Appellant alleges that the court has acted and will

act to protect a wide range of parties and interests, including: the former and current bankruptcy

judges presiding over the Chapter 11 cases, GT and their counsel, the interests of the Debtors' prepetition lenders Citicorp and Silver Point, "the dubious integrity of this venue," and "other federal judges." (*See* D.I. 75 at 16-17.) The Recusal Motion and certification offer no extrajudicial factors that might support these allegations and no factual support apart from the court's adverse ruling. Similarly, Appellant's repeated accusations that the court is "incapacitated" and "corrupt" (*see e.g., id.* at 15, 18) has no source outside of Appellant's view of the official proceedings and is not supported by any factual allegations that the court can glean from the pleadings. The court concludes that Appellant's unsupported statements would not lead a reasonable person, with knowledge of all the facts, to conclude that its impartiality might reasonably be questioned or that the court's rulings were based on bias or actual prejudice. Nor do the court's rulings demonstrate that it is acting in such manner in this appeal. After careful and deliberate consideration, the court also concludes that it has no actual bias or prejudice towards Appellant and that a reasonable, well-informed observer would not question the court's impartiality. In light of the foregoing standard and after considering Appellant's assertions, the court concludes that there are no grounds for recusal under 28 U.S.C. §§ 144 and 455, and the Recusal Motion will be denied.[14]

## V. APPEAL OF THE RECONSIDERATION ORDER

This appeal is driven by Appellant's desire to (i) pursue causes of action belonging to the estate, notwithstanding that those causes of actions were assigned to the Liquidating Trusts

---

[14] As noted, the Recusal Motion seeks a variety of additional relief that is inapposite to this appeal, including additional attempts to dismiss or "undo" the Debtors' Chapter 11 cases based on various theories. (*See* D.I. 75 (seeking relief based on lack of jurisdiction, improper venue, and fraud on the court.) Appellant, however, has waived his bankruptcy standing by virtue of his entry into the Shareholder Settlement and Notice of Withdrawal and his ability to file further pleadings in the Chapter 11 cases. (*See* B.D.I. 2245, 2423). The sole issue before this court is whether the Bankruptcy Court abused its discretion in denying reconsideration of Appellant's Sanctions Motion and Turnover Motion. The unrelated relief purportedly sought in the Recusal Motion has no bearing on the appeal and is therefore not properly before the court.

17

pursuant to the Plan and long ago settled, and (ii) seek sanctions against, or recovery of damages from, GT. Through the appeal of the Reconsideration Order, Appellant purports to seek "de novo review of the Bankruptcy Proceedings" (*see* D.I. 43 at 3), apparently asking this court to, among other things, (i) revisit the findings made in the Plan Confirmation Order, (ii) reverse the findings upon which the Final Fee Order was based, (iii) and issue sanctions against, and require discovery from, Appellees, based on claims that Appellant has been repeatedly told by the Bankruptcy Court he has no standing to assert. The sole issue before this court is whether the Bankruptcy Court erred in entering an order denying reconsideration of the Turnover Motion and Sanctions Motion.

Upon appeal, an order denying a motion to reconsider, alter, or amend is reviewed for abuse of discretion. *See Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986)). "An abuse of discretion occurs when the court bases its opinion on a clearly erroneous finding of fact, legal conclusion or improper application of law to fact." *Infinity Invs. Ltd. v. Kingsborough (In re Yes! Entm't Corp.)*, 316 B.R. 141, 144 (D. Del. 2004) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 180 (3d Cir. 2002)). It is also considered an abuse of discretion where the court's action was "arbitrary, fanciful, or clearly unreasonable." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002).

A motion to reconsider an order pursuant to Federal Rule of Bankruptcy Procedure 9023 may only be granted if the party seeking reconsideration establishes one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court issued the ruling; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194,

1218 (3d Cir. 1995)); *see also Zokaites Properties LP v. La Mesa Racing, LLC*, 2011 WL 2293283, at *1 (W.D. Pa. June 9, 2011) (citing *Berry v. Jacobs IMC, LLC*, 99 F. App'x 405, 410 (3d Cir. 2004) (noting the standard movant "must meet to prevail on a motion for reconsideration is high.")). If none of these extraordinary circumstances are present, reconsideration should be denied.

"Mere disagreement with the Court's decision will not suffice." *Dare Invs., LLC v. Chi. Title Ins. Co.*, Civ. No. 10-6088 (DRD), 2011 WL 5513196, at *5 (D.N.J. Nov. 10, 2011) (internal quotations omitted); *Zokaites*, 2011 WL 2293283, at *1 (noting that "[a] party's mere disagreement with the Court does not translate into the type of clear error of law which justifies reconsideration of a ruling."). Moreover, reargument and reconsideration requests "are not a substitute for an appeal from a final judgment" nor are they an opportunity for "endless debate between the parties and the Court." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) (internal citations omitted); *see also, Zokaites*, 2011 WL 2293283, *1 ("a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the Court.")

## A. The Bankruptcy Court Did Not Abuse its Discretion in Denying Reconsideration of the Sanctions Motion

Based on Appellant's allegations of GT's fraud on the Bankruptcy Court, the Sanctions Motion sought (a) disgorgement of GT's pre- and post-petition fees and expenses; (b) sanctions for alleged violations of discovery rules, (c) a compensatory award of $2 million in favor of "*pro se* litigants;" and (d) serious sanctions, including disbarment, for GT's alleged violations of the Federal Rules of Bankruptcy Procedure and the Delaware Lawyers' Rules of Professional Conduct. (*See* B.D.I. 1950.)

19

The record reflects that Appellant never sought derivative standing to pursue any claims against GT on behalf of the estates. In denying the Sanctions Motion, the Bankruptcy Court found that it had "previously approved a comprehensive settlement between the Trusts and [GT] by order dated February 2, 2012 [Docket No. 1974]" and that "the predicate for the [Sanctions Motion] rests upon claims that have been settled or released by the confirmed Plan or by the above-referenced Order." (B.D.I. 1997.)[15]

In seeking reconsideration, Appellant did not argue there was an intervening change in controlling law bearing on denial of the Sanctions Motion. (*See* B.D.I. 2001-1.) Nor did Appellant present any new evidence that was not available when the Bankruptcy Court denied that motion. (*See id.*)[16] Construing the pleading liberally, Appellant appeared to base his request for reconsideration on the need to correct a clear error of law or fact. (*See id.* at 2001-1 at 2.) Appellant argued his request for sanctions was "limited to sanctioning Nancy Mitchell and [GT] for the harm they inflicted on me by their breach of the duty of candor before the [court] and by their failure to produce discovery documentation in a timely fashion" and that he had "exclusive claims" against Appellees that "did not belong exclusively to the estates and the Liquidation Trustee." (*See id.*) Appellant argued that because no hearing on the Sanctions Motion was held,

---

[15] In denying a related motion for continuance filed by Appellant, the Bankruptcy Court again "in light of the foregoing settlement [between GT and the Trusts created under the conformed Plan] and the exculpation provisions contained in the Plan, there is no legal basis upon which [Appellant] may assert standing to seek the relief sought in the Sanctions Motion. (*See* B.D.I. 2000).

[16] Appellant's reliance in this appeal on the opinion issued by the Third Circuit in *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp., et al)*, Nos. 13-1373 and 13-1959 (3d Cir. Aug. 11, 2014) (the "Preferred Bank Opinion") as factual support for his claims is improper and misplaced. As noted by the Appellees, the Preferred Bank Opinion relates to an appeal in an adversary proceeding to which neither Appellant nor Appellees are a party and is based on facts and circumstances that are entirely unrelated to this appeal and are not a part of the record established by the parties in this appeal. Even if it were appropriate to consider new evidence at the appellate level, the Preferred Bank Opinion, which was a review of a motion to dismiss, does not even contain any findings of fact, but rather provides that "[f]or purposes of this appeal, our recitation of the factual background assumes, *without deciding*, the truthfulness of the Trust's well-pleaded allegations, construing the complaint in the light most favorable to the Trust and drawing all reasonable inferences in the Trust's favor." *See* Preferred Bank Opinion, at 4 n.1 (emphasis added).

he did not have an opportunity to clarify for the Bankruptcy Court that his claims against Ms.

Mitchell and GT "do not belong to the estate because those claims arise out of the post-petition

misconduct." (*Id.*) At the April 11, 2012 hearing on the Reconsideration Motion, Appellant

similarly asserted that he "is not seeking any relief from the estate and is not asserting any cause

of action from Nancy Mitchell's and GT's pre-petition conduct. The movant is only asserting

causes of action related to GT's and Nancy Mitchell's post-petition misconduct as it applied to the

movant." (B.D.I. 2054, 4/11/2012 Hr'g. Tr. at 42:5-9.) The Bankruptcy Court was not persuaded:

> The record in these cases reflect that the Trustee appointed under the Plan is vested
> with whatever claims and causes of action (as well as other property) the Debtors
> possessed, including potential claims and causes of action against GT. The Trustee
> has settled those claims pursuant to an Order of this Court dated February 2, 2012
> [B.D.I. 1974]. The record further reflects that the Court has previously approved
> GT's final fee application for services rendered in these cases [B.D.I. 1554]. The
> order approving the settlement was not the subject of any appeal, and has become
> final. In the instant matter, this Court denied the Movant's motion for sanctions
> against GT and Ms. Mitchell because it appeared to the Court that it was based on
> "claims that have been settled or released, by the confirmed Plan or by the [GT
> Settlement] Order." [B.D.I. 1996].

> [Appellant's] claims alleged against GT for disgorgement of fees, sanctions and
> damages relate to conduct by GT in its capacity as counsel to the Debtors. Those
> claims have been settled by the Trustee of the Plan Trusts. The Court acknowledges
> that the order approving the settlement provided that approval was without
> prejudice to [Appellant's] rights and claims, if any, against GT. However, that
> proviso does not operate to create or confer any valid claim upon the [Appellant],
> and the record developed in these proceedings supports the Court's finding that
> [Appellant] does not possess any such direct claims against GT in his own right;
> the claims and causes of action identified by [Appellant] belong to the estate, and
> have been settled for value and released by the estate.

(B.D.I. 2107.)

On appeal, Appellant makes wide-ranging accusations regarding the concealment of

evidence. Construing the pleading liberally, Appellant appears to argue that the Bankruptcy Court

erred in denying the Sanctions Motion based on Appellant's lack of standing to pursue claims

against GT. (*See* D.I. 43 at 7). Appellant argues that he has standing to pursue those claims –

notwithstanding that the claims he asserts belonged to the estates and have been released by the Plan or settled by the Liquidation Trust – because he is "a creditor with a pecuniary interest in the estate." (*See id.*)[17] Appellant provides no further support for his argument, as set forth in his Reconsideration Motion, that he possesses individual and direct claims against GT in his own right, or cite any case law that would support such an assertion.

The court agrees with the Bankruptcy Court's analysis. Appellant's alleged claims against GT for disgorgement of fees, sanctions, and damages relate to conduct by GT in its capacity as counsel to the Debtors. The Plan provided a broad exculpation to attorneys for case-related activities[18] and to the extent not covered by that provision, those claims were released by the Settlement Order.[19] The claims and causes of action identified by [Appellant] belong to the estate, and Appellant has identified no direct claims against GT in his own right.

Appellant further argues that he should be able to pursue his claims because the "Trustee had no incentive to pursue claims against [GT] because [the Trustee was] also implicated in the spoliation of evidence" and thus settled the controversies with GT "for no consideration." (*See* D.I. 43 at 9.) However, the record clearly indicates that the settlement with GT provided meaningful value to the estates. (*See* B.D.I. 1956, 1974.) Appellant further argues that he was denied the right to pursue claims against GT because he is a *pro se* litigant, but Appellant offers no argument or evidence that the Bankruptcy Court denied him this or any other relief on the basis

---

[17] On March 25, 2014, the Court docketed Appellant's Request for Judicial Notice (D.I. 21) ("First Judicial Notice Request"), through which Appellant requests that the Court take judicial notice of an adjudicative fact, pursuant to Federal Rule of Evidence 201, based on a retention of jurisdiction provision included in a settlement order entered in other proceedings, Civ. No. 10-1105-GMS, 13-1108-GMS, and 13-1124-GMS. Appellant appears to cite the order for the purpose of bolstering his argument that Appellant has standing to pursue claims against Appellees. That order has no factual or legal bearing on the appeal before the Court, and the First Judicial Notice Request will be denied.
[18] Article XI.A states, in relevant part, that Appellees are exculpated from "any liability for any post-petition action taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtors and/or relating to [the] Chapter 11 Cases," with the exception of acts or omissions determined in "a Final Order to have constituted gross negligence or willful misconduct." *See* Plan, Art. XI.A.
[19] *See* B.D.I. 1974 (order approving settlement between Liquidation Trusts and GT on February 2, 2012).

of his *pro se* status. (*See* D.I. 43 at 9-10.) Rather, the record reflects that the Bankruptcy Court extended Appellant every courtesy throughout the Chapter 11 cases.

The Bankruptcy Court's conclusion that the Appellant lacked standing to pursue claims against Ms. Mitchell and GT is plainly supported by the record in these cases. It apparent from the pleadings that the claims and causes of action identified by Appellant relate to conduct by GT in its capacity as counsel to the Debtors, belonged to the Debtors' estates, and were settled for value and released by the estates. The docket reflects that the Final Fee Orders, Confirmation Order, and Settlement Order were not appealed and are final orders. The court finds no merit in the argument that denial of the Sanctions Motion was based on an erroneous finding of fact or legal conclusion or improper application of law to fact, and the Bankruptcy Court did not abuse its discretion in denying reconsideration of the Sanctions Motion.

## B. The Bankruptcy Court Did Not Abuse its Discretion in Denying Reconsideration of the Turnover Motion

Specifically, the Turnover Motion sought an order compelling the Liquidation Trust and GT to release and/or turn over the "full inventory" of the Debtors' Board of Director meeting minutes. (*See* B.D.I. 1951.) Notably, the Turnover Motion follows six prior attempts by Appellant to obtain the same documents.[20] Notwithstanding the entry of final orders on each of those

---

[20] In response to three motions to compel the Debtors to answer questions about Board of Director Minutes that the Appellant alleged were missing from the Debtors' production (B.D.I. 1495, 1496, 1535), the Bankruptcy Court ordered the turnover of these documents and took the extraordinary measure of requiring Debtors' counsel to file a certification that all responsive Board of Director Minutes had been provided to Appellant. (*See* 7/16/2009 Hr'g. Tr. 19:24–21:6). Per the Bankruptcy Court's instructions, a certification to that effect was filed by Nancy Mitchell on July 29, 2009 (B.D.I. 1562) ("Mitchell Certification"). Not satisfied that the minutes had been turned over, Appellant persisted in filing motions for the same relief. On September 18, 2009, Appellant filed a fourth substantially similar motion to compel the Debtors to answer questions regarding allegedly missing Board of Director Minutes (B.D.I. 1613), which the Trust opposed, referencing its objection to Appellant's three previous, virtually identical motions. (*See* B.D.I. 1621.) Appellant filed yet another substantially similar motion on July 7, 2010. (B.D.I. 1777.) The Bankruptcy Court denied this fifth motion to compel, noting that Appellant had requested this relief multiple times, all responsive documents had been produced (as reflected in the Mitchell Certification), and that the Confirmation Order and the First Dismissal Denial Order had become final (B.D.I. 1807). Following four unsuccessful attempts to dismiss the chapter 11 cases, Appellant filed a sixth motion to compel the Debtors to produce the same documents. (*See* B.D.I. 1906.) The Bankruptcy Court denied the sixth motion to compel on September 30, 2011, stating, in

motions, Appellant filed a seventh motion, arguing that the documents sought in the Turnover Motion were critical to the adjudication of the Sanctions Motion. (*See* B.D.I. 1951 at 2.) The Bankruptcy Court denied the Turnover Motion on the basis that its purpose was "to develop facts relating to potential claims that belong, not to [Appellant], but to the estates and to the Trusts created under the confirmed Plan." (B.D.I. 1996.) The Bankruptcy Court also noted that it had previously ruled on, and denied, Appellant's request for the documents or information sought in the Turnover Motion on several prior occasions in the Chapter 11 cases. *See id.*

In seeking reconsideration, Appellant did not argue there was an intervening change in controlling law bearing on denial of the Turnover Motion. (*See* B.D.I. 2001-1.) Nor did Appellant present any new evidence that was not available when the Bankruptcy Court issued the order denying the Turnover Motion. (*See id.*) Construing the pleading liberally, Appellant appeared to base his request for reconsideration on the need to correct a clear error of law or fact. (*See id.* at 2001-1 at 2.) Appellant contends that GT withheld discovery that would have cast doubt on the exculpation provisions of the Plan, that production of those documents was therefore critical to his Sanctions Motion, and thus the Turnover Motion should have been granted. (*See id.* at 4-5.) Appellant's arguments in support of reconsideration of the Turnover Motion were predicated on the "exclusive" individual claims he purports to assert against GT in the Sanctions Motion. While Appellant appears to concede his lack of standing to pursue the "total disgorgement of fees earned by GT prepetition" and claims "exclusively owned by the [Trusts] prior to the [Settlement Order]," (*see id.* at 2), Appellant argued that the Plan did not exculpate GT for "gross negligence or willful misconduct" and that the Settlement Order did not affect his "exclusive claims against Nancy

---

relevant part, that "it appear[ed] to the Court that most of the relief requested in the Motion was previously considered and denied by the Court on multiple occasions" and also that "the Movant does not have standing to pursue the claims which would be the subject of his discovery requests." (*See* B.D.I. 1916.)

24

Mitchell and [GT] in regards to denial of discovery and breach of candor ... [which] did not belong exclusively to the estates." (*See id.* at 2.)[21]  In denying reconsideration, the Bankruptcy Court noted:

> [The Turnover Motion] has its genesis in litigation surrounding the Plan confirmation hearing. The record reflects that the Movant advised the Court at or prior to the confirmation hearing that certain document production relating to requests for minutes of Board of Director meetings was not complete. In response, the Court ordered the Debtors to supplement their production and took the extraordinary step of directing that Debtors' counsel file a certification attesting that all responsive documents had been produced. That certification, dated July 29, 2009 was filed. . . . Movant remains unsatisfied with the document production, and has asked on multiple subsequent occasions, including today, for further orders compelling the production mentioned above or imposing sanctions for GT's alleged failure to have done so. The Court has denied these requests at least twice before, and the record does not reflect that any of these rulings were appealed by Movant.

(B.D.I. 2107.)

On appeal, Appellant's arguments largely mirror his arguments in support of the Sanctions Motion: namely, that GT has concealed evidence; that Appellant has individual claims against GT based on this misconduct that did not belong to the estates exclusively, and thus were not released by the Plan or Settlement Order; and that the Bankruptcy Court erred in denying the Turnover Motion based Appellant's lack of standing to pursue estate causes of action. (*See* D.I. 43 at 15.) Based on his pecuniary interests Appellant asserts that he has "standing to sanction GT and Mitchell until the end of the proceedings." (*Id.*) However, the Bankruptcy Court decision clearly considered the types of claims alleged in the Sanctions Motion – claims alleged against GT for

---

[21] On August 28, 2014, the Court docketed Appellant's Request for Judicial Notice (D.I. 25) ("Second Judicial Notice Request"), through which Appellant requests that the Court take judicial notice of a letter from the Trustee to Appellant, dated October 3, 2013, which the Trustee provided to Appellant another shareholders who wish to pursue a claim for theft loss for federal income tax purposes with respect to equity interests. To the extent that Appellant requests judicial notice of the letter for the purposes of confirming that he was a victim of financial fraud, the Second Judicial Notice Request is granted. The letter references the "egregious financial fraud perpetrated by certain senior management of and certain members of the Board of Directors," and the resulting cancellation of all equity interests in the Debtors, and the court will take judicial notice of those statements. To the extent that Appellant requests judicial notice of the letter for the additional purpose of supporting Appellant's alleged claims GT, the court denies that the letter constitutes any evidence of misconduct by GT, and the Second Judicial Notice Request is denied.

disgorgement of fees, sanctions, and damages that relate to conduct by GT in its capacity as counsel to the Debtors – and ruled that any such claims belonged, not to the Appellant in his own right, but to the estates, and had been released or settled. (*See* B.D.I. 2107 at 5.) Appellant cites no law in support of his right to seek discovery and assert such claims on an individual basis. Moreover, the Bankruptcy Court found on several prior occasions that there was no support for Appellant's underlying claims of post-petition fraud, and those rulings were never appealed.[22]

The record supports the Bankruptcy Court's conclusions that the relief sought by Appellant has already been granted; that Appellant's additional requests for the same relief have been denied by numerous orders that have become final and non-appealable; that the purpose of the Turnover Motion is to develop facts relating to potential claims that belong, not to Appellant, but to the estates and to the Trusts created under the confirmed Plan, which have been released and settled pursuant to the Plan and Settlement Order (among other final orders); and that Appellant has failed to demonstrate that he holds any claims in his own right against GT. The court finds no merit in the argument that denial of the Turnover Motion was based on an erroneous finding of fact or legal conclusion or improper application of law to fact. Thus, the Bankruptcy Court did not abuse its discretion in denying reconsideration of the Turnover Motion.

At bottom, the Reconsideration Motion merely rehashes Appellant's prior arguments and reiterates his disagreement with the Bankruptcy Court's rulings. Appellant's dissatisfaction notwithstanding, there has been no clear error of law or fact meriting amendment of the orders denying sanctions and turnover of documents. *Dare*, 2011 WL 5513196, at *5; *Zokaites*, 2011 WL 2293283, at *1. The court finds no abuse of discretion in the Bankruptcy Court's denial of

---

[22] *See e.g.*, B.D.I. 1745 ("There is simply no support in the record for the proposition that confirmation of the Plan was procured by fraud."); B.D.I. 1938, 11/17/2011 Hr'g. Tr. at 12:8-11 (stating that the court was "not satisfied – and I've made this finding before, that the fraud extended over into the post-petition proceedings before this court.").

the Reconsideration Motion, as Appellant failed to establish any of the three justifications necessary to sustain reconsideration, and denial of reconsideration was not based on any erroneous finding of fact, legal conclusion, or improper application of law to fact.

## VI.    CONCLUSION

For the foregoing reasons, the court will DENY the Recusal Motion and AFFIRM the Reconsideration Order.  A separate order consistent with the foregoing shall be entered.

December  9  , 2016

UNITED STATES DISTRICT JUDGE